State v. Waite

---

STATE OF NORTH CAROLINA v. RANDALL K. WAITE

No. 764SC627

(Filed 2 February 1977)

1. **Homicide § 21— infant son — involuntary manslaughter — sufficiency of evidence**

    Evidence was sufficient to be submitted to the jury in a prosecution for involuntary manslaughter of defendant's infant son where the evidence tended to show that defendant hit the child on the head twice; the child died from blunt head injury; the child had numerous

other bruises about his body; and defendant was walking around cursing and punching things after he hit the child.

2. **Homicide § 15— involuntary manslaughter — violence at crime scene — competency of evidence**

In a prosecution of defendant for involuntary manslaughter of his infant son, the trial court did not err in allowing a neighbor to testify that, when she arrived at defendant's apartment shortly after he struck the child, there was broken glass in the apartment, since evidence of violence at the scene of the crime was competent.

3. **Homicide § 15— involuntary manslaughter of infant — condition of child's body — relevancy**

In a prosecution for involuntary manslaughter of defendant's infant son, the trial court did not err in allowing into evidence testimony concerning bruises on the child's body other than the one causing death, since the condition of the child's body was relevant to the question of cause of death.

APPEAL by defendant from *Lanier, Judge.* Judgment entered 5 March 1976 in Superior Court, ONSLOW County. Heard in the Court of Appeals 12 January 1977.

Defendant was convicted of involuntary manslaughter in connection with the death of his young son, Randall K. Waite, Jr.

*Attorney General Edmisten, by Assistant Attorney General H. A. Cole, Jr., for the State.*

*Billy G. Sandlin, for defendant appellant.*

VAUGHN, Judge.

[1] Defendant contends that the court erred in failing to grant his motions for nonsuit. Involuntary manslaughter is the unintentional killing of a person without malice (1) by some unlawful act not amounting to a felony or naturally dangerous to human life, or (2) by an act or omission constituting culpable negligence. *State v. Ward,* 286 N.C. 304, 210 S.E. 2d 407.

The evidence may be summarized as follows:

Shortly after 9:00 a.m. on 29 November 1975, defendant's wife had gone to a grocery store and defendant was alone in their apartment with deceased and another child who was less than one month old. Defendant later told an investigator that he had told the deceased child to stay on the couch but that the

child got off the couch and entered the kitchen. Defendant said he then hit the child but did not knock him down. He said that he then picked the child up and hit him on the head once more. After he struck the last blow the child's eyes rolled back in his head and the child began moaning. He placed the child on the couch and went to get his wife. The wife went to a neighbor's house and told her that "her baby wouldn't wake up." The neighbor went to defendant's apartment and saw the baby on the couch. She saw that the child was having difficulty in breathing and that his eyes were rolled back in his head. The child had turned "bluish-gray" and there was a bruise on the right side of his face that was "bluish-red." The baby was dressed in a diaper, rubber pants and a pajama top. The neighbor attempted to administer mouth-to-mouth resuscitation. The neighbor testified that windows in the storm door were broken and that she saw broken pictures and glass in the apartment. Defendant's hand was bloody and he was walking around the apartment cursing and punching things, including the walls. Another neighbor drove the child to the Air Station Hospital from which he was rushed by ambulance to the hospital at Camp Lejeune and later to a hospital in Portsmouth, Virginia.

The child was examined at the Camp Lejeune hospital by Dr. Kessler who testified, in substance, as follows:

The child, when first seen, was unresponsive to stimulation and appeared to be dying. He saw a bruise on the child's right forehead. There were extensive, but older, bruises over the lower part of his back and buttocks. There was bleeding into the nerve part of the eye indicating severe pressure inside the skull. Dr. Kessler decided that the child should be transferred to Portsmouth Naval Hospital and accompanied the child to that hospital.

The State then offered the testimony of Dr. Springate, a deputy medical examiner for the Town of Norfolk, Virginia who testified that he performed an autopsy on the body of the child. We will quote, in pertinent part, his testimony as it is set out in the record:

"Dr. Springate then testified that there was a faint blue hemorrhage on the left forehead near the midline, one-fourth inch in diameter and a faint irregular hemorrhage on the right side of the forehead just about the right eyebrow. Dr. Springate then explained what a hemorrhage

is. He further stated that he found a hemorrhage in the upper right buttocks about one-half inch in diameter and another hemorrhage which was reddish brown also on the right buttock about one inch in diameter and also on the back inner aspect of the right forearm around the elbow or just below the elbow three-fourths inch in diameter with slight to moderate swelling of the right elbow itself.

He further observed a scalp hemorrhage beneath the regions of the two hemorrhages which were visible on the forehead. There were no skull fractures. A thin layer of blood in the subdural space over the surface of the brain on each side existed. The brain was massively swollen and a few contusions or bruises of the brain in what we call the right orbital lobe and a hemorrhage beneath another very thin membrane on the surface of the brain.

He testified that in his opinion the cause of death was a blunt head injury."

In response to a hypothetical question, Dr. Springate also testified, in effect, that if the jury found defendant struck the child on the head, that the blow could have caused the blunt trauma that was the cause of death.

Defendant did not testify. His only witness was his wife. She testified that on 26 November 1975, the child fell and struck his head on a table. Thereafter, she saw a bruise on the child's forehead and noticed that the child did not seem to be very alert and seemed to want to lie down all the time. The only bruise she saw on the child on the morning of 29 November 1975 was the one that had been there earlier. Although he was reluctant to do so because he thought she would leave him, her husband did admit that he slapped the child on the head. Her husband also admitted slapping the child on 27 November 1975, because he had spilled some cereal. Her husband was not angry when she left for the store on the morning of 29 November 1975 and that he became upset because of the delay in getting an ambulance.

When considering defendant's motions for nonsuit, the evidence must be considered in the light most favorable to the State. When so considered, it is clear to us that the evidence was sufficient to require that the case be submitted to the jury.

[2]  In another assignment of error defendant argues that it was error to allow the neighbor to testify that when she arrived at defendant's apartment there was broken glass in defendant's apartment. The objection is without merit. The State's evidence tends to show a senseless assault by defendant on a helpless infant. Certainly evidence of violence at the scene of the crime is competent. We also note that defendant offered no objection when the same witness testified as to defendant striking the wall and cursing after she arrived on the scene.

[3]  Defendant's second assignment of error is that the "court should have sustained the Defendant's objection to introduction of evidence of other bruises other than the one causing death." The objection was lodged when the doctors were testifying as to the condition of victim when seen by them. Defendant cites no authority for his argument and it appears to be baseless. The cause of the child's death was one of the questions that the jury had to resolve. The condition of the child's entire body was relevant on that question, among others.

The third assignment of error is directed to the form of some of the hypothetical questions asked of the doctors. The questions appear to have been inartfully phrased but defendant's specific exceptions to the questions fail to raise the possibility of prejudicial error. Moreover, the charge of the court was not brought forward. We assume, therefore, that the court properly instructed the jury as to what evidence they could consider and the purposes for which it could be considered.

We have considered all of the assignments of error brought forward by defendant. No prejudicial error has been shown.

No error.

Judges HEDRICK and CLARK concur.